UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10194-RCL |
| | ) | |
| FRANCIS MUOLO | ) | |

### Government's Opposition to Defendant Muolo's Motion for Downward Departure

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this opposition to Defendant Muolo's motion for a downward departure [Doc.No.280].

Muolo claims that a brain injury sustained when he was four years old is a proper basis for a downward departure under the Sentencing Guidelines. Muolo makes the claim that his brain injury left him with an "impaired intellectual executive function." Id. He further claims that his mental deficit "reduces his ability to understand important social information and make appropriate choices based on such information." Id.

As an initial matter, the government disputes as a factual matter that Muolo's brain injury had any substantial connection to the crimes in this case, or otherwise renders him outside the heartland of the Guidelines. Notably, nothing in Muolo's life history reflects an inability to conduct himself in a lawful manner. Muolo graduated from high school and was a successful athlete. He served in the Navy without incident. He has been gainfully employed in various capacities since his discharge from the Navy. In fact, for a number of years Muolo lived and worked in Southern California. Moreover, Muolo was an engaged and active parent to a teenage son. Finally, despite his age, Muolo has no history of criminal convictions or arrests. Thus,

Muolo's personal history belies his factual claim that he suffers from some extraordinary mental defect. Instead, Muolo's history reveals just the opposite – that he has the ability to conform his conduct to societal norms, and that he did so for nearly 40 years.

Two guidelines frame the analysis of Muolo's motion for a downward departure. First, "mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted" except as provided in U.S.S.G. §5K.2. See United States v. Jones, 432 F.3d 34, 43-44 (1st Cir. 2005). Thus, in the absence of meeting the requirements of U.S.S.G. §5K2.13, any claim regarding a diminished mental capacity is a discouraged ground for departure. United States v. Morrisette, 429 F.3d 318, 325 (1st Cir. 2005)(mental illness is discouraged ground for departure).

The government disputes that Muolo qualifies for a departure under U.S.S.G. §5K2.13. First, Muolo has failed to demonstrate that he was "suffering from a significantly reduced mental capacity." The relevant application note requires that the defendant demonstrate a significantly impaired ability to (A) understand the wrongfulness of his criminal conduct or (B) control criminal behavior which he knows is wrong. See U.S.S.G. §5K2.13, comment (n.1). There is no evidence that Muolo had an inability to control his behavior, and Muolo makes no such claim. While Muolo claims that he is naive and his expert report indicates that he has difficulty perceiving and understanding emotional cues, "leading to impaired social judgment," nothing submitted by Muolo reflects a significant inability to understand the wrongfulness of acting as a getaway driver for the armed robbery of a drug dealer. Misunderstanding social cues is a far cry from not understanding that speeding from the scene of a three kilogram drug heist constitutes a crime. In addition, Muolo's repeated efforts to conceal his participation in the crime when

speaking with law enforcement officers also reflects that he fully appreciated the wrongfulness of his conduct.[1] Likewise, Muolo's decision to tip-off Minotti about DEA's investigation and his attempts to persuade DEA that he was fully cooperating while he was in fact protecting Minotti, also reflect his understanding of the wrongfulness of his conduct and his ability to manipulate a complex set of facts.

Second, Muolo has failed to demonstrate that his impairment "contributed substantially to the commission of the offense." U.S.S.G. §5K2.13.  Muolo has submitted no persuasive evidence that his impairment caused him to join the criminal venture with Minotti, Bucci and Jordan.  In the absence of testimony from Muolo regarding his motives for joining the venture and the link between his impairment and his decision to participate, the Court should reject the general assertions made in his motion for a downward departure.[2]  See, e.g. United States v. Lauzon, 938 F.2d 326, 332 (1st Cir. 1991)(defendant with borderline intelligence who was easily persuaded by others to participate in crime was not entitled to diminished capacity departure).

Finally, Muolo, like Minotti, was heavily addicted to painkillers at the time of the crime. It is highly likely that his impetus for joining the conspiracy was to feed this narcotics addiction. It is also highly likely that if he suffered any impairment to his judgment, the primary source of that impairment was his craving for narcotics rather than a 40 year old brain injury.  Since a departure is unavailable under U.S.S.G. §5K2.13 for reduced mental capacity caused by the use

---

[1]  The history of Muolo's interactions with law enforcement officers before and immediately after his arrest is detailed in the government's response to Muolo's motion to suppress. [Doc.No. 157].

[2]  If Muolo were to testify regarding his reasons for joining the venture and those reasons varied from the reasons he gave during his proffer, the government would seek to impeach him with his prior inconsistent statements.

of drugs or other intoxicants, Muolo must also demonstrate that his regular ingestion of Oxycontin did not cause any reduction in mental capacity or otherwise exacerbate any relevant brain injury. He has failed to meet his burden of establishing whether it was his drug addiction or his brain injury which caused any inhibition in his mental function.

The government also intends to oppose any similar diminished capacity argument under 18 U.S.C. §3553(a). The First Circuit has recently reiterated the significant weight which should be given to the advisory guideline range, and the obligation on the moving party to persuade the Court that a non-guideline sentence is appropriate:

> Notwithstanding the recasting of the guidelines as advisory, they remain "an important consideration in sentencing." *Jiménez-Beltre,* 440 F.3d at 518."[T]he guideline range, taking applicable departures into account, is the starting point for [the] analysis...." *United States v. Saez,* 444 F.3d 15, 2006 WL 888127, at *2 (1st Cir. Apr.6, 2006) (citing *Jiménez-Beltre,* 440 F.3d at 518). From there, the proponent of a higher or lower sentence may offer reasons and facts to persuade the district court to impose a sentence outside the GSR. *See id.* The party seeking a nonguidelines sentence, whether the defendant or the government, bears the burden of "providing the basis" to support such a sentence. *See Jiménez-Beltre,* 440 F.3d at 519.

United States v. Rivera, 2006 WL 1360933, *2  (1st Cir. 2006).

In the instant case, Muolo has failed to demonstrate that a brain injury from which he has allegedly suffered for nearly 40 years had any substantial impact on his participation in this offense. As noted above, his personal history reveals that he managed to obtain an education, play on teams, serve in the Navy, and live a productive life in Massachusetts and California without incurring a prior criminal record and without substantial incident. Moreover, he has failed to establish a direct link between his brain injury and his criminal conduct.

In addition, a sentence of 60 months incarceration – which falls within the guideline range after giving Muolo safety valve credit, and credit for his cooperation – is necessary to

reflect the seriousness of Mr. Muolo's offense, to provide just punishment, and to promote respect for the law.

The government respectfully requests the opportunity to supplement these arguments orally at the sentencing hearing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

Date: May 25, 2006

By: *John T. McNeil*
JOHN T. McNEIL
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

*John T. McNeil*
JOHN T. McNEIL
Assistant United States Attorney

Date: May 25, 2006